**Sandra Lynn KLAUS, Appellant,**

v.

**Delbert C. KLAUS, Respondent.**

**No. 34951.**

Missouri Court of Appeals,
St. Louis District.
Division Two.

April 9, 1974.

Motion for Rehearing or Transfer to Court En Banc is Denied May 14, 1974.

Cundiff & Turken, St. Charles, for appellant.

Ralph H. Schnebelen, St. Louis, for respondent.

SMITH, Presiding Judge.

Plaintiff-mother appeals from the trial court's judgment granting defendant-father's motion to modify a divorce decree by transferring the custody of the parties' eight year old son to the father.

The parties were divorced in September 1970, and the mother was awarded custody of the child. The father was granted and exercised frequent temporary custody and visitation rights. In June 1972, in part due to urging of the boy's maternal grandfather, defendant brought his motion to modify. Much of the testimony had little or nothing to do with questions of parental fitness and the boy's welfare. The trial court specifically attached no significance to testimony concerning "animals, animal hairs, alleged allergies, firearms or rifles, cleanliness, or the condition of the clothes of the minor child." We are similarly unimpressed with that testimony. The trial court also "to a large extent, disregard[ed] the testimony of . . . the maternal grandfather." We shall do likewise, for even from a cold transcript, his obsessive zeal to interfere in the affairs of his daughter because of his dislike for her life style is apparent.

■ Although we review court-tried cases de novo on both the law and the evidence, we defer to the findings of fact made by the trial court unless they are clearly erroneous. We therefore accept the trial court's finding that the home of the father and his new wife is "better" than that of the mother. Were we dealing with an original award of custody of a child who has been living with both parents and following a divorce is to be placed with one or the other, the "better" home would be a relevant consideration in making the placement. Where custody has once been placed the "better" home question is of little significance. Before a change of custody is granted there must be evidence that a change of circumstances has occurred and that the child's welfare calls for a change in custody. Although "change of circumstances" is ostensibly rooted in doctrines of res judicata, it also reflects the courts' concern that children not be moved from one environment to another upon slight changes in the status of the parents. It is only where the change of circumstances or conditions is such that the welfare of the child requires it that custody should be transferred. Irvine v. Aust, 193 S.W.2d 336 (Mo.App.1946).

We therefore treat the court's finding that the father's home is "better" as pertinent only in determining whether that home constitutes an acceptable respository for the child and not as evidence supporting any need for change.

■ We turn then to the reasons given by the court for its order. Those reasons were: (1) the mother's morals, marriage and remarriage of short duration, (2) open and notorious association with a married man having a family, (3) the absence of plaintiff from her home and the minor child on numerous occasions, and (4) the total failure of plaintiff-mother to provide any moral or religious instruction for the minor child. The burden of establishing the existence of facts warranting a transfer of custody is on the party seeking such change. Dupree v. Dupree, 357 S.W.2d 241 (Mo.App.1962). The party originally awarded custody is prima facie capable of handling that responsibility. Irvine v. Aust, *supra*.

■ The mother remarried after her divorce from the defendant and, two months after the remarriage, divorced this second husband. She divorced him because of his unfatherly attitude toward her son. There is no evidence that the marriage and divorce in any way affected her son. It is difficult to understand how a divorce obtained because her new husband was unresponsive to her son can furnish a basis for concluding that the mother is unfit or is jeopardizing the son's welfare.

■ Following her second divorce the mother began dating a married man, Mr. Geldbach, then separated from his wife. Plaintiff admittedly slept with him when her son was gone for weekend visitations with his father and on some occasions the man stayed overnight in the mother's mobile home when the son was there, but slept by himself on a couch. At the time of the custody hearing Geldbach's divorce action was pending and by the time of an after-trial hearing he had married plaintiff and was actively participating in her son's scouting and school activities. Adultery in and of itself, does not mark a parent as unfit. It is the effect upon the child which is important. J__ F.R. v. R__ R., 482 S.W.2d 543 (Mo.App.1972). Here there is no evidence that the child was aware of any misconduct or that it had any adverse effect upon him. The evidence indicates that Geldbach provided to the boy a considerate and interested father figure. We need not condone plaintiff's conduct to conclude it does not establish unfitness nor detriment to the child's welfare. Aside from her association with Geldbach there is no evidence of plaintiff's bad morals. She did not run around with men promiscuously, drink, take drugs or misbehave in public.

**482**

The absence from home conclusion is based upon testimony that plaintiff frequented a tavern in which Geldbach had an interest for two weeks. The evidence was clear that she did not drink excessively, if at all, nor misbehave while there and the record is silent about where her son was at the time or in whose care. She testified she was there on three or four occasions helping with matters involving the opening of the place for business. Mere absence from home does not establish unfitness, particularly where the record fails to reflect that the child was left without adequate care. J— F.R. v. R— R., *supra*.

The alleged absence of moral and religious training is based solely upon testimony that plaintiff did not take her son to church. Moral training is not dependent on formal religious services nor do we know of any rule of law that the absence of formal religious training warrants a change of custody.

The record here is replete with evidence of the love existing between mother and son, of her concern for his health and schooling, and of her discipline of him. Certain school problems have disappeared since the boy was returned to medication and he was happy and progressing well in school at the time of the custody hearing. Testimony of the father that the boy had said his mother told him to lie and that she would lie was pure hearsay and cannot form a basis for a determination of unfitness.

Upon our review of the record and granting credibility to all testimony favorable to the court's finding, we are unable to find a sufficient evidentiary basis to warrant removal of the child from the environment into which he was placed by the original decree of divorce. The order of the trial court granting the motion to modify is reversed.

McMILLIAN and GUNN, JJ., concur.