526 S.W.2d 947 (1975)
In re the Marriage of V. M., Petitioner-Respondent,
v.
L. M., Respondent-Appellant.
No. 36060.
Missouri Court of Appeals, St. Louis District, Division Two.
August 26, 1975.
*948 Colson & Wagner, James E. Alexander, Farmington, for respondent-appellant.
Charles G. Hyler, Farmington, for petitioner-respondent.
STEWART, Judge.
This proceeding for the dissolution of the marriage of V. M. and L. M. under § 452.300 et seq.[1] was commenced by V. M., the husband, as petitioner. The trial court found that the marriage was irretrievably broken and entered judgment dissolving the marriage. As more fully developed herein, the court made a division of marital property; granted custody of 3 of the unemancipated minor children to respondent, and 2 of the children to petitioner, and made an order for maintenance and child support.
The wife appeals contesting the division of the property, the allowances for maintenance and child support and the award of custody of Mary Jane, age 16, and Andy, age 15, to the father all for the reason that the trial court failed to consider all relevant factors as set forth in the applicable statutes.
The parties were married for one month short of twenty-five years when they separated. Eight children were born of the marriage. At the time of the trial five of the children were minors. Richard (18), Mary Jane (16), Andy (15), Joe (12), and Betsy (14), a retarded child. The husband and wife had acquired a fair amount of property.
We shall develop the facts more fully as they relate to the points raised.
Sections 452.300 to 452.415, titled Dissolution of Marriage, which became effective January 1, 1974, have made significant changes in the field of family law in Missouri. Our legislation is patterned after the Uniform Divorce Act (U.L.A.) Sections 301-410, with notable exceptions.[2] Primarily this act has eliminated the concept of the innocent and injured spouse who may discard the miscreant spouse. The basis for severing the marriage bond is now based *949 upon the factual finding that the marriage is irretrievably broken.[3] § 452.305.
That portion of the decree dissolving the marriage is not contested. There was sufficient substantial evidence to support the finding. We need not discuss § 452.305 further.
In accordance with Rule 73.01(3)(a) it is our duty in this court-tried case to review both the law and evidence and to render such judgment as the trial court ought to have given. T. v. T., 447 S.W.2d 795 (Mo.App.1969). To properly fulfill our obligation we must be presented with a record upon which we can function with a "degree of confidence in the accuracy of our final judgment". State ex rel. Highway Commission v. Hill, 373 S.W.2d 666, 668 (Mo.App.1963). With these principles in mind, as developed hereafter, we must reverse this case in part and remand it to the trial court for further proceedings.

CUSTODY
The wife challenges the award of custody of Mary Jane, age 16, and Andy, age 15, to the husband. The husband has not sought custody of the other three children and has not contested the award of those children to their mother. At the time of the trial the children, Richard (18), Betsy (14) and Joe (12) lived with their mother in the family home at Delassus, Missouri, which adjoins Farmington, Missouri. Betsy, who is retarded, attends a special school at the State Hospital in Farmington. The husband was living in open adultery with another woman and Mary Jane was living in the house with her father and the other woman and her daughter. Andy was living by himself in a small house near his father's business. The wife, prior to the dissolution proceedings, took Andy to his father because she was unable to manage him. The father was "unable" to keep him in the house with his lady friend so he put Andy by himself in a small house near his business.
Probably the most difficult task faced by a trial court is that of determining custody of children. § 452.375 now governs the question of custody in a proceeding to dissolve a marriage. It is no panacea for this problem. That section reads as follows:
"The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
(1) The wishes of the child's parents as to his custody;
(2) The wishes of a child as to his custodian;
(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;
(4) The child's adjustment to his home, school, and community; and
(5) The mental and physical health of all individuals involved."
The factors listed in the statute are not exclusive. They must be considered along with all other relevant factors. The prime consideration is still the best interest of the child. There is no exact formula for the determination under this worthy but nebulous standard. Some of the general precepts which have long been enunciated are still germane to this problem. An award of custody may not be used to reward or punish a parent. L. v. N., 326 S.W.2d 751 (Mo.App.1959). Adultery in itself will not necessarily disqualify a parent as unfit. Klaus v. Klaus, 509 S.W.2d 479 *950 (Mo.App.1974). However, the moral fitness of the person seeking custody of a child is a proper subject for the court's consideration. Stockton v. Guthary, 415 S.W.2d 308 (Mo. App.1967).
With respect to the wishes of the parents, the wife specifically testified that she wanted custody of each of the children. There is no direct testimony from the husband on this factor. He does not permit Andy to live in the house with him but opposes a change of the award of custody. Mary Jane lives with him and from his actions we can infer that he wishes custody of his daughter.
The evidence of the children's wishes is purely hearsay. The husband testified that Andy would rather be with his mother. He further testified that Mary Jane would prefer being with him. Mrs. M. said that Mary Jane would like to come with her but Mr. M. would not repair Mary Jane's car if she returned to her mother. There is no evidence in the record that the court interviewed the children as provided in § 452.385.
There is no evidence concerning the interaction or of the relationship between these two children and their brothers and sisters; none as to the relationship with the parents except that the father said that Andy loved his mother, and there was a problem between the mother and Mary Jane concerning the girl's motorcycle. As to Mary Jane's interaction and relationship with the woman her father is living with and who may "significantly affect her best interest", the record is devoid of any evidence. All we know is that this woman is living in open adultery with the father and that Mary Jane lives in the house with them.
The transcript is practically devoid of evidence on the factors (4) and (5) listed above.
The moral fitness of the mother is not questioned. The father who is living in open adultery testified that he had been associating with "various women" prior to the time he moved in with his present woman. He was going with a different woman when he and his wife were separated. Though not fully developed there was some evidence indicating excessive drinking on the part of the father.
We note that no investigation and report was made under the provisions of § 452.390. We are cognizant of the fact that this provision is not mandatory but it is most salutary.
There are no perfect parents and we are painfully aware of the difficulties of supervising teenage children. We have not found a case in which the court has knowingly made an award of custody to a parent living in open adultery. Upon the meager record before us we are not prepared to say that separating Mary Jane and Andy from each other and from the other minor children and awarding their custody to the parent living in open adultery is in the best interest of the children. J. v. E., 417 S.W.2d 199 (Mo.App.1967). See Ortiz v. Ortiz, 465 S.W.2d 662 (Mo.App.1971); and Hoffmann v. Hoffmann, 395 S.W.2d 277 (Mo.App.1965). The award of Andy to his father who permits him to live by himself appears to be no award of custody at all. There is no evidence as to the extent of supervision given him or of the conditions under which he lives. It may be that upon a retrial the court may give some thought to placing these children under the supervision of 3rd parties if neither parent is prepared to handle the responsibility. Stockton v. Guthary, supra.
On the record before us we are in no position to render a judgment with respect to the custody of these children. Some time has passed since the award of custody was made, some of the problems faced by parties may have dissipated. We deem it to be in the best interests of all persons involved to remand this case for a hearing de novo respecting the custody of Andy and *951 Mary Jane. McCallister v. McCallister, 455 S.W.2d 31 (Mo.App.1970).

DIVISION OF PROPERTY
The husband had been the major source of the income for the family. He operated the oil company which he founded. The wife worked in a shoe factory for a few months right after they were married. She took in washing for 9 months in 1957 when the husband was unemployed. Primarily she was a homemaker raising the eight children of the marriage. Neither party is possessed of separate property.
The property of the parties, for the most part, consisted of real estate and a 90% interest in a closely held corporation operated by the husband.
The concept of marital property and the powers granted to the trial court for its division between the spouses is one of the statute's innovations. The governing section is 452.330.
In view of the conclusion which we must reach in this case it will serve no useful purpose to extend this opinion with a gratuitous discussion of the factors delineated in the statute.
It is conceded that all assets are marital property therefore we need not consider the statutory definition.
The extent and valuation of the property came almost exclusively from the oral testimony of the husband. There was no expert testimony and no books or records were introduced into evidence. The husband referred to a document marked as Exhibit "A.", which was apparently a list of assets drawn up by him. This exhibit was not introduced into evidence and is not before us.
The court decreed that the wife have the family home valued at $24,000 with an incumbrance of $6607.89 which is to be assumed and paid by her; the contents of the home valued at $6,000 and the 1971 Pontiac valued at $2,300.
The decree evidently sought to award the remaining marital property to the husband, however we are unable to reconcile the facts elicited in the trial with the judgment entered by the court. The husband testified that 268 shares or 90% of the stock of the oil company was issued in his name. 2 shares were in the name of his wife and the balance was in the names of the two older children. The husband testified that the corporation was worth $44,000 with incumbrances of $16,000. The decree makes no specific disposition of the corporate stock but decrees that the husband "shall have the property owned by and the business known as M___ Oil Company Inc. . . . and the Delassus Service Station and Car Wash and the following described real estate. . ." One of the three parcels described is occupied by the filling station and main office of M___ Oil Company, the corporation. The decree designates this real estate as being titled in the name of Mr. & Mrs. M. There was no evidence introduced at trial as to the ownership or valuation of this real estate. From the record we are unable to determine whether this real estate might have been erroneously considered in the valuation of the corporation or whether this parcel was omitted from the total valuation of the marital property.
On the record before us we are unable to render a fair judgment and must remand for a full determination of the assets and their fair valuation and a division of the marital assets in accordance with the factors enumerated in the statute along with other relevant factors. In Re M___ P ___ S ___, 342 S.W.2d 277, 283 (Mo.App. 1961).
We might also point out that the court had no authority to award the business known as M___ Oil Company Inc. and the property of the corporation to the husband. *952 This decree purports to affect the property of the Corporation and the rights of the remaining shareholders. "A judgment can be taken only for or against a party to the action". 49 C.J.S. Judgments § 28. As to the corporation the court was limited to the disposition of the stock owned by the parties which is admittedly marital property.
We also note that the record makes references of the sale of a house by the husband to the older son, Michael. It appears that there is an outstanding note or obligation on this property, possibly to the husband. The parties may also wish to clarify this subject.

MAINTENANCE
The court made an award of maintenance to the wife in the sum of $75.00 per week. The award of maintenance is governed by § 452.335. The first factor to be determined by the court reads:
"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;"
In view of the disposition we have made of the issue of the division of marital property we must, of necessity, remand this case for retrial on the issue of maintenance because we cannot anticipate what division will be made of the marital property upon retrial. The extent and nature of the property apportioned to the parties is one of the items which the court must consider.

SUPPORT
The court also made an award of $20.00 per week for support of each child awarded to the wife.
The question of child support would also depend to some extent upon the division of property because by § 452.340(3), (6) "the financial resources of the custodial parent" and "the financial resources and needs of the noncustodial parent" must be considered. All necessary factors can only be fully developed upon the division of property upon retrial. We should not attempt to make a determination of the amount of support for those children in the custody of the wife upon the record before us. Simon v. Simon, 248 S.W.2d 560, 568 (Mo.1952).
For the reasons herein we remand this case for a retrial of the issues of the custody of Andy and Mary Jane; the determination of the extent, value and division of the marital property, the amount of maintenance and the amount for support. The judgment is affirmed in all other respects.
CLEMENS, P. J., and KELLY, J., concur.
NOTES
[1] All references are to RSMo Supp.1973 unless otherwise indicated.
[2] With respect to the award of maintenance the conduct of the party seeking maintenance is a factor. In the division of marital property the conduct of the parties is a factor.
[3] See 9 Uniform Laws Annotated 456, 457, Uniform Marriage and Divorce Act, Prefatory Note.