**Stanley WURTZ and Ula Wurtz, Plaintiffs-Respondents,**

v.

**DANIEL HAMM DRAYAGE COMPANY, a corporation, and Daniel Hamm, Defendants-Appellants.**

No. 36584.

Missouri Court of Appeals, St. Louis District, Division One.

Dec. 2, 1975.

Harry Gershenson, St. Louis, for plaintiffs-respondents.

Thompson & Mitchell, Edwin D. Akers, J., St. Louis, for defendants-appellants.

DOWD, Judge.

Defendants appeal from the award of attorney fees in favor of plaintiffs.

On December 23, 1972, the defendants executed and delivered to plaintiffs a promissory note for the sum of $90,000. The note was due thirty days after date, and was payable to the order of the plaintiffs. The note bore an interest rate of eight percent per year after maturity. The note also provided that the makers agreed to pay "all costs, expenses and fees of collection (including fees for legal services or advice) in case payment is not made at maturity."

On May 31, 1974, after a lawsuit, deposition, and interrogatories, the defendants paid plaintiffs a total of $97,938 which represented the full maturity value of the note plus interest in the amount of $7,938. Plaintiffs' counsel, Mr. Harry Gershenson, Sr., also received check for $1,000, payable to counsel and client, which was stipulated to be applied on whatever attorney fees the circuit court deemed proper under the provisions of the note for the services rendered by counsel. After a hearing the circuit court awarded attorney fees of $12,500.

Counsel for plaintiffs testified at the hearing. Mr. Gershenson has been engaged in civil practice for over fifty years, and has a distinguished record of service in the American Bar Association, the Missouri Bar, and the Bar Association of Metropolitan St. Louis. Counsel recited the following chronological record of his work in this case, from which we omit mention of numerous correspondence, by phone and by mail, and meetings between counsel and his clients, the defendants, defendants' counsel, and interested third parties.

Counsel was retained in this matter on May 23, 1973. He immediately contacted

the Chambers Land Company, which had executed a collateral deed of trust to secure the Hamm deed of trust. After weeks of unsuccessful efforts to secure payment of the note, counsel filed a petition in St. Louis Circuit Court on July 10, 1973; the petition sought the face amount of the note, accrued interest, and "reasonable attorney's fees." On September 7, 1973, after receiving the defendants' answers, counsel prepared interrogatories and sent them to opposing counsel. When he had not received answers to the interrogatories by November 13, 1973, counsel prepared a Motion to Compel Answers to Interrogatories.

On January 18, 1974, counsel deposed defendant Daniel Hamm and then met with opposing counsel relative to payment of the obligation.

April and May of 1974 saw counsel become involved in several complicated transactions. The Ace Doran Hauling and Rigging Company was attempting to acquire defendant Daniel Hamm Drayage Company. Bob Doran, in order to arrange necessary financing to pay off plaintiffs' note and some tax obligations, wanted Hamm Drayage Company to obtain a release of the two deeds of trust, the first being held by the Bank of St. Louis and by the Chambers Land Company and the second being held by plaintiffs to secure their note. The Bank of St. Louis, however, would release its first deed of trust only if plaintiffs put up collateral to protect them.

After working with opposing counsel and the Bank of St. Louis, counsel met with defendants and other interested parties on May 31, 1974, to close the matter and receive payment of the note and accrued interest.

Counsel's professional opinion of the customary charges of lawyers in the community for the legal work performed here was a minimum of fifteen percent of the full amount collected. His charges for other kinds of legal work is $75.00 per hour. On this case his records showed about twenty hours of work, but he did not record all his hours of work.

David Strauss, a lawyer for forty-seven years and a specialist in the field of creditor's rights, had listened to counsel's recitation of his services. For the same work Strauss's office would have charged $12,846, plus an additional $6,500 if suit were filed for a total fee of $19,346. Mr. Strauss stated that $19,346 was a reasonable fee for the legal work performed here and that this amount is the standard and accepted fee charged by lawyers in the commercial practice in all of the large areas in the country. Mr. Strauss further testified that this case was not a simple collection matter as it is normally understood by lawyers. The defendants presented no evidence.

Defendants' contention on appeal is that the amount of attorney fees awarded is so grossly excessive as to constitute an abuse of judicial discretion.

■ As always on appellate review of court-tried cases, we review the case upon both the law and the evidence, giving due regard to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01(3).

■ Defendants concentrate on the amount of the award in relation to the time counsel spent to perform his services. But the amount of time spent on a case is only one element to consider and is ordinarily of minor importance. *Scott v. Home Mutual Telephone Co.*, 510 S.W.2d 793 (Mo.App. 1974).

In a very recent case the Missouri Supreme Court has outlined the factors to be considered in determining the reasonableness of attorney fees. *First National Bank of Kansas City v. Danforth*, 523 S.W.2d 808, 822–23 (Mo.1975), cert. denied, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483; & 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). These factors are identical to those listed in the Missouri Code of Professional Responsibility, Rule 4, DR2–106:

"(1) The time and labor required, the novelty and difficulty of the questions

involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the [area] for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

There is ample evidence in the record to enable this court to take the listed factors into consideration as guides in determining the reasonableness of the fee.

■ Counsel is a distinguished and veteran attorney who has had experience in this field of law. A considerable sum of money was involved, $97,938, and counsel succeeded in collecting the entire amount of the note ($90,000) plus interest in the amount of $7,938. Both counsel and the attorney who served as his expert witness testified that the requested fee was comparable to the fees charged by lawyers in collection work both in this area and in urban commercial centers across the nation.

Counsel worked for over a year to obtain the money owed his client. The legal work involved ranged from a court suit to telephone calls. This was not a normal collection case. Here counsel's efforts to collect the sum were complicated by a number of factors: takeover bids, releases of first and second deeds of trusts, financing the buying of a business, seeking relief from tax obligations. To secure payment of the note for his client, counsel had to negotiate not only with defendants and their counsel, but also with the Bank of St. Louis.

■ The determination of reasonable attorney fees is a matter within the sound discretion of the trial court. *Billinger v. Jost,* 510 S.W.2d 57 (Mo.App.1974). We find no abuse of discretion. The award was made by an experienced trial judge. The evidence in this case supports the amount of attorney fees awarded plaintiff by the trial court.

Affirmed.

WEIER, P. J., and RENDLEN, J., concur.