535 S.W.2d 304 (1976)
L. H. Y., Plaintiff-Respondent,
v.
J. M. Y., Defendant-Appellant.
No. 37029.
Missouri Court of Appeals, St. Louis District, Division No. Three.
March 23, 1976.
*305 Paul H. Schramm, M. Harvey Pines, Clayton, for defendant-appellant.
Bahn & Saitz, Robert W. Saitz, St. Louis, for plaintiff-respondent.
GUNN, Judge.
This is a child custody case whereby the mother appeals the trial court's ruling sustaining the father's motion to modify child custody and ordering transfer of an infant child from the mother to the father. The central issue of this case is whether there has been a change of circumstances where the child's best interest and welfare would be served thereby justifying the change of custody. We find that the order of the trial court was not erroneous and affirm the trial court's award.
In an appeal of a court tried case, we review the law and the evidence de novo *306 giving deference to the trial court's findings and its ability to have judged the credibility of the witnesses. Wurtz v. Daniel Hamm Drayage Co., 530 S.W.2d 752 (Mo. App.1975); Brunswick Corp. v. Briscoe, 523 S.W.2d 115 (Mo.App.1975). On appeal of a court tried case, the appellate court does not function as a judicial second guesser. And where, as here, there is a conflict of testimony between witnesses, the reviewing court should defer to the findings of the trial court unless it is satisfied that they should be otherwise. Brand v. Brand, 534 S.W.2d 628 (Mo.App.1976); Morris v. Holland, 529 S.W.2d 948 (Mo.App.1975). In our review of this case, we proceed on the presumption that the trial court studied all of the evidence thoroughly and decreed custody in the manner it believed would be in the best interests of the child. The basis for this presumption is that the trial court is "in a better position not only to judge the credibility of the witnesses and the persons directly but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." L. E. S. v. J. A. E., 507 S.W.2d 681, 684 (Mo.App.1974). Of course, our primary concern is the child's welfare. E. C. S. v. J. D. L., 529 S.W.2d 423 (Mo.App.1975). With the foregoing tenets guiding us, we turn to the facts of the case.
The bonds of the mother's and father's ephemeral marriage were riven on November 22, 1972, and pursuant to agreement between the parties, the mother was given custody of the only child of the marriage, a 19 month old boy. The father was faithful in exercising his visitation rights and the parties were extremely cooperative in observing the custody and visitation rights of the other, for which they are to be heartily commended. In 1974, however, the father filed a motion to modify the divorce decree as to the custody of the son. At the hearing on the father's motion for modification, there was testimony that subsequent to her divorce the mother and her son had lived with another man for a period of four to six months, during which period regular sexual activities took place between the mother and the man. There was also evidence that the mother had engaged in sexual relations with the 17 year old son of her landlady, and at the time of the modification hearing had been participating in sexual activity with a married man. A former paramour of the mother testified that during the four to six month period he lived with her the mother had not provided proper medical care for the boy when he was ill and infected with a skin disease nor did she train him in his toilet habits; she did not tend to her son's nutritional needs; she shirked her responsibilities to the son; and she left it to the paramour to train, feed, discipline and find medical aid for the boy. The testimony was that it was the father who was generally called upon to arrange for the son's medical attention. A babysitter for the boy testified that the mother was often late in picking up her son and would leave the boy with the babysitter overnight and on weekends so that she could enjoy excursions with her male friends. There was also testimony that the mother engaged in the use of narcotics (although vociferously denied by the mother) and that the boy, on occasion, had slept in the same bed with the mother and one of her lovers. The boy also spent weekends living in a trailer with the mother and a suitor. A St. Louis County deputy juvenile officer made a study of both the mother's and father's homes and concluded that although both homes were adequate, the boy, "would have a more normal and secure home life with his father." The recommendation of the juvenile officer was that the father be given custody of the boy. The home study emphasized that when the boy was with the mother he was frequently shifted from bed to bed to accommodate the mother's social engagements. From the record it appears that the son knew at least four people as "Dad" (two of the mother's boyfriends, the babysitter's husband, and the boy's own father).
The father's fitness was not challenged, and the record supports a finding that he is fit to have custody of his son and provide a stable home life for him. The trial court sustained the father's motion for modification of custody, granting custody of the child to the father.
*307 In our consideration of this case, we are bound by the following language of § 452.410 RSMo Supp.1974:
"The court shall not modify a child custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."[1]
The mother, while admitting at least part of her sexual escapades, argues that her son is presently normal, healthy and happy and that there have been insufficient changes in circumstances whereby the child's best interests would be promoted by transferring custody to the father. In this latter regard, the mother relies on Blair v. Blair, 505 S.W.2d 444 (Mo.App.1974). The mother also cites R. v. R., 482 S.W.2d 543 (Mo.App. 1972), and Klaus v. Klaus, 509 S.W.2d 479 (Mo.App.1974), for the proposition that past moral lapses of sexual misconduct on the part of a parent do not, in themselves, render a parent unfit where the child's welfare is unaffected.[2] It is the basic thrust of the mother's argument that the trial court erred in transferring custody of the child to the father since the court was apparently erroneously persuaded that the father's home would be a "better" home for the boy. She argues that under Klaus v. Klaus, supra, once custody has initially been placed, the question of whether one home or the other is "better" has little significance. The mother also suggests that her conduct has had no detrimental effect upon her son, and until it does there is no legal justification for the transfer.
It is true, of course, that the moving party in a case of this nature has the burden of showing a change of conditions requiring the transfer of custody. Brand v. Brand, supra; Northrup v. Sieve, 517 S.W.2d 470 (Mo.App. 1974). And it is a rebuttable presumption that a young child is better placed with its mother. Johnson v. Johnson, 526 S.W.2d 33 (Mo.App.1975). But, certainly, moral fitness of a parent is a vital factor in determining who should have custody of a child. V. M. v. L. M., 526 S.W.2d 947 (Mo.App.1975).
To support the trial court's ruling for the custody award to the father, there was evidence that the mother had: made use of drugs,[3] been sexually promiscuous, allowed her son to sleep in the same bed with her and another man, failed to adequately care for her son nutritionally and medically, neglected her son in exchange for her own pleasures with other men. While the mother challenges the veridicality of part of the evidence presented against her, we defer to the trial court's ability to judge the candor and veracity of the witnesses. In so doing, we find substantial basis for the trial court's findings that a change of circumstances existed and that the welfare of the child would be served by the transfer of his custody to the father.
The mother charges that as a victim of divorce she should not be required to live a pristine life nor be stifled in her search for the pleasures of society. The mother, of course, is entitled to have her own social life. But the mother's associations with men have not been harmless peccadillos, and we cannot ignore that her conduct may have an ultimate effect on the growth and character of her son. She has permitted her affairs of the heart and body to interfere with her taking care of her own son. While the mother loves her son, the record reveals that a primary concern for her has been in fostering her relationships with various men in conflict with her care for her son. This is evidenced by the fact that the mother has allowed her rendezvous with male friends to interfere with her scheduled fetching of her son from a babysitter on *308 nights and weekends, even when the son was in need of his mother's attention.
The mother points to current social trends as allowing for greater permissiveness in moral attitudes and suggests that she had been doing no more than living according to accepted mores. It is not our function to indite a revisionary preachment as to moral models. We do recognize that today we have changing standards of morality. Certain conduct once looked upon by society with opprobrium does not carry the social or private stigma it once did a few short years ago. Such conduct may even be socially "approved." But private personal conduct by a parent which could well have an effect on children during the years in which their character, morality, virtues and values are being formed cannot be ignored or sanctioned by courts. Private conduct of a parent in the presence of a child or even under some other circumstances may well influence his or her young, impressionable life.
We do not pass judgment on private morality in the absence of some societal interest. That is left to others. Our concern here is the best interest of the child. That is the polestar we are duty bound to follow. There was sufficient evidence for the trial court to conclude that the conduct of the mother in this case, under all the circumstances, was not compatible with that ultimate objective. No matter how she or society views the private morality of the situation, we cannot ignore the influence her conduct may well have upon the future of this child and cannot give our judicial cachet to such conduct by etching in the lawbooks for all to read and follow. We see no salutary effect for the young child in exposing him to the mother's miasmatic moral standards.
The mother urges that Klaus v. Klaus, supra, serves as this court's condonation of adultery or, at least, that it is of little concern. The mother's analysis of Klaus in that regard is wrong. Klaus must be viewed in the light of factual circumstances there present, where there was no indication of exposure of a young child to a mother's adulterous conduct. That is not the situation here.
We are also unimpressed by the mother's argument that there can be no custodial change unless there is evidence of some harm to the son. She argues that since the boy is currently normal and healthy no basis exists for the custody modification. We believe that the boy's present condition is in spite of rather than as a result of the mother's care, and it is not necessary to wait for manifestations of harmful consequences before action is taken.
We find that there was sufficient basis for the trial court to make the judgment it did; that the modification award was based on a change of circumstances and in the child's best interest and welfare; and that the judgment was not erroneous. Brand v. Brand, supra; E. C. S. v. J. D. L., supra.
The judgment is affirmed.
SIMEONE, P. J. and KELLY, J., concur.
NOTES
[1] Although the divorce took place in 1972, the provisions of the Dissolution of Marriage Act apply. Section 452.415(3) RSMo Supp.1974.
[2] See also, Cook v. Cook, 532 S.W.2d 833 (Mo. App. 1975).
[3] The mother vigorously denied any use of narcotics.