**In re The Marriage of Richard Francis RYAN, Appellant,**

v.

**Pamela Jane RYAN, Respondent.**

**No. 44087.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 17, 1983.

Roberts, Roberts & Rohrer by Geoffrey L. Pratte, Farmington, for appellant.

McIlrath & Maynard by Michael L. Maynard, David E. Woods, Flat River, for respondent.

SATZ, Judge.

In this cause, the father appeals from a denial of his motion to modify custody and from an award of attorney's fees to the mother's attorney. We vacate the award of attorney's fees, and, for reasons which follow, we reverse the denial of the father's motion for custody and remand the cause for additional findings of fact and, if deemed necessary by the trial court, for additional evidence relevant to the time be-

tween the trial court's order and this remand.

The marriage of the parties was dissolved in June, 1979. The mother was awarded custody of three minor children, then aged 8, 6 and 4. The father was granted temporary custody and visitation rights. Six months after the decree of dissolution, the father filed a motion to transfer primary custody of the children to him. He alleged that a significant change of circumstances in the mother's conduct subsequent to the dissolution of marriage made the transfer "necessary to serve the best interests of the child[ren]." The trial court denied the father's motion to modify custody and awarded the mother's attorney $1,580 in attorney's fees, $1,000 of which was to be paid by the father. This appeal followed.

 To support its denial of the father's motion to modify, the trial court made Findings of Fact and Conclusions of Law.[1] In its Conclusions of Law, the court stated:

" . . . the conduct of [the mother] subsequent to the Decree of Dissolution has not adversely effected [sic] the best interest of the children; and consequently, the Court concludes that to grant modification of the primary custody of the children would not serve the best interest of the minor children."

This conclusion, the father argues, presupposes that an adverse affect on the children must be found as a predicate to a change in custody. This presupposition, the father contends, is a misconception of the law in Missouri and, thus, the trial court's conclusion rests on an improper premise. In effect, the father argues the court need not wait until the moral environment of the child's custody adversely affects the child; rather, the father contends, the court may change the child's custody when it is reasonably predictable that the moral environment will adversely affect the child. We agree.

 To support a motion to modify custody subsequent to a dissolution decree, the moving party carries the burden of showing a substantial change of conditions, *Brand v. Brand,* 534 S.W.2d 628, 632 (Mo. App.1976); *Northrup v. Sieve,* 517 S.W.2d 470, 473 (Mo.App.1974), that necessarily requires a change of custody to serve the best interest of the child. *Korn v. Korn,* 584 S.W.2d 179, 181 (Mo.App.1979); *In Re Marriage of Britton,* 574 S.W.2d 475, 476 (Mo. App.1978); § 452.410 RSMo (Supp.1983). Obviously, a change in the moral fitness of the custodial parent is a vital factor in determining whether custody should be changed to the non-custodial parent. *See, e.g., V.M. v. L.M.,* 526 S.W.2d 947, 950 (Mo. App.1975). However, it had been repeatedly stated and, thus, apparently accepted that "[w]hile morals of a parent are a proper factor to consider in modifying custody, . . . *any immoral behavior must affect the children and their welfare before it would be relevant for purposes of transfer of custody.*" [Emphasis added]. *In re Marriage of Cook,* 532 S.W.2d 833, 837 (Mo.App.1975); *See, e.g., Yount v. Yount,* 366 S.W.2d 744, 748–749 (Mo.App.1963). This standard, literally applied, requires a showing that a child was adversely affected by the custodial parent's moral lapse before a change of custody is required. *In re Marriage of Cook, supra.*

A different standard was used by this Court in *L.H.Y. v. J.M.Y.,* 535 S.W.2d 304, 308 (Mo.App.1976), when the Court was confronted with gross moral misconduct of the custodial parent, the mother.[2] The mother argued that her son was "currently" normal and healthy, and, since there was no evidence he was being harmed, there was no basis for a custody modification. This Court responded:

"We are also unimpressed by the mother's argument that there can be no custo-

---

1. The trial court's Findings of Fact and Conclusions of Law are set out in the appendix to this opinion.

2. The evidence showed the mother had "made use of drugs, been sexually promiscuous, al-

lowed her son to sleep in the same bed with her and another man, failed to adequately care for her son nutritionally and medically, [and] neglected her son in exchange for her own pleasures with other men." *Id.* at 307.

dial change unless there is evidence of some harm to the son .... We believe that the boy's present condition is in spite of rather than as a result of the mother's care; and *it is not necessary to wait for manifestation of harmful consequences before action is taken.*" *Id.* at 308 [Emphasis added].

This standard was accepted and used by our colleagues in the Western District. *See Mansell v. Mansell,* 583 S.W.2d 284, 287 (Mo.App.1979); *N.K.M. v. L.E.M.,* 606 S.W.2d 179, 186 (Mo.App.1983).[3]

■ Obviously, there is a difference between the standards used in the two lines of cases—one requires proof of an adverse affect on the child before custody can be changed, the other requires the less onerous burden of proof of a reasonable likelihood that an adverse affect will occur before custody can be changed. Moreover, facially, the two standards cannot be reconciled. Admittedly, the use of the former standard occurs most often in those cases in which the moral lapse was promiscuity or adultery. *See, e.g., In re Marriage of Cook* and cases cited therein, *supra,* 532 S.W.2d at 837. However, the moral lapses of promiscuity or adultery should have no peculiar status in our society. It is difficult enough to properly perceive the accepted moral norms of our changing society without compounding that difficulty by making the required proof for a change of custody depend upon the particular norm that has been violated. Thus, the standard used to determine the effect on the child by moral lapses of promiscuity or adultery should be no different than the standard used for other moral lapses. It is more sensible to change a child's custody when there is a reasonable likelihood of an adverse affect on the child

than to wait until the damage is done and attempt to repair that damage. Thus, we find the more recent standard the proper standard to use.[4]

■ The trial court did not use the more recent standard. For judicial economy, we would prefer to apply this standard to the facts found by the trial court and, thus, determine, as a matter of law, whether these facts created the reasonable likelihood that the children would be adversely affected. However, from the record, we cannot determine whether the court credited evidence favorable to the mother. If the trial court would have found for the mother using the proper standard, we would accept the evidence and permissible inferences favorable to the mother and would disregard contradictory testimony. *Cusumano v. Outdoors Today Inc.,* 608 S.W.2d 136, 139 (Mo. App.1980); *S.G. Adams Printing v. Central Hardware Co.,* 572 S.W.2d 625, 628 (Mo. App.1978). Considering the record in this light, we could find additional facts which would supplement the facts explicitly found by the trial court. For example, we could find that since the decree of dissolution, the mother has consistently and faithfully cared for her children's needs or hired competent babysitters to do so. She has kept the children appropriately dressed and clean. She has been home to make meals for the children on a regular basis. On weekends, however, she often returned home late, because she worked until 1:00 a.m. Although she had frequent guests in the evening and some until the early morning hours, these guests came over to play cards and watch T.V. Most often the children were put to sleep at 8:00 by their mother or by their

---

**3.** In *N.K.M. v. L.E.M., supra,* the evidence showed a possible lesbian relationship between the mother and another woman. A psychiatrist testified, apparently without contradiction, that the child, a girl, was "normal and well adjusted" and showed "no ill effects from her present environment." *Id.* at 186. With particular reference to the possible lesbian relationship, the court stated:

"The court does not need to wait, though, till the damage is done. If the child's situation is such that *damage is likely to occur* as her

sexual awareness develops with the approach of young womanhood, the court may in a proper case remove her from the unwholesome environment." [Emphasis added]. *Id.* at 186.

**4.** Application of this standard to the facts of those cases using the former standard would not change the result of those cases. For example, *see, In re Marriage of Cook, supra,* and *Klaus v. Klaus,* 509 S.W.2d 479 (Mo.App.1974).

live-in babysitter. The children had friends come over to play on a regular basis, had regular attendance at school and received good grades. A Deputy Juvenile Officer who interviewed the children testified that the oldest girl was mature for her age and the two younger children were perfectly normal for their age; and, in a "home study" report made on the mother, the social service worker concluded: "I believe [the mother] loves her children and believes [sic] she provides for them adequately in the material and emotional sense. I cannot entirely discount the fact that her name has been linked to a series of men, again hearsay. Outside of this facet of her situation, I feel [the mother] will provide a nurturing, enriching environment for her children." These facts define a moral environment quite different from the facts found by the trial court.

However, because the mother was the prevailing party as a result of the use of an improper standard, we are precluded from using the evidence and inferences favorable to the mother to determine whether the result reached by the trial court would be the same if the proper standard were used. Reluctantly, we must remand this case to the trial court for the crediting or discrediting of evidence favorable to the mother, for any additional findings of fact the court deems necessary and for any additional evidence the court deems necessary, relevant, and occurring between the time of the trial court's order and this remand. The trial court may then apply the standard we have determined to be the proper standard.

We also address the father's other argument on appeal. As noted, the trial court ordered the father to pay the mother's attorney $1,000 in attorney's fees. The father complains that the mother filed no pleading requesting an award of attorney's fees; therefore, the father argues, he received no notice of this issue and the award was affirmative relief not within the scope of the pleadings.

On remand, this cause will be reopened, at least, for the trial court to credit or discredit the evidence favorable to the mother. Thus, on remand, the father will have ample notice and opportunity to oppose the mother's request for attorney's fees. *Dickinson v. Dickinson,* 631 S.W.2d 61, 62 (Mo.App.1982). This will obviate any prejudice claimed to have been caused by a pleading deficiency. *Id.* at 62; *Bishop v. Bishop,* 618 S.W.2d 261, 263 (Mo.App.1981).

The award for attorney's fees is vacated, and this cause is remanded for reconsideration in accord with the directions contained in this opinion.

SMITH, P.J., and PUDLOWSKI, J., concur.

## APPENDIX

### "FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

. . . . .

### FINDINGS OF FACT

THE COURT FINDS That on June 8, 1979, This Court entered its Decree dissolving the marriage of RICHARD FRANCIS RYAN and PAMELA JANE RYAN with the primary care, custody and control of the minor children of said marriage, to-wit: HEATHER ELIZABETH RYAN, DONALD RICHARD RYAN and MARGARET HELEN RYAN being granted to the Respondent, PAMELA JANE RYAN, subject to certain specific rights of visitation and temporary custody with the Movant RICHARD FRANCIS RYAN. The Court further notes that on November 29, 1979, RICHARD FRANCIS RYAN filed a Motion to Modify the custody of the minor children as contained in the prior Court Order. Such Motion alleged that, due to significant change of circumstances in Respondent PAMELA JANE RYAN's conduct subsequent to the dissolution of marriage, same was detrimental to the best interest and welfare of the minor children.

THE COURT FINDS That since the granting of the dissolution of marriage Respondent has had sexual intercourse with

one individual on five (5) or six (6) occasions.

THE COURT FURTHER FINDS That at the original dissolution hearing one of Movant's witnesses was unavailable to testify; and further, that this witness, prior to the dissolution hearing and prior to the hearing on the *Motion to Modify*, was threatened and harassed by certain friends of Respondent.

THE COURT FURTHER FINDS That Movant not only fully pays the child support required of him, but additionally purchases clothing, exercises all visitation and temporary custody rights fully, takes the children to church on a regular basis and many other outings of various nature at some expense to himself.

THE COURT FURTHER FINDS That Respondent does not require the children's regular attendance at church.

THE COURT FURTHER FINDS That Respondent, from the time of dissolution to this hearing, would have frequent visits from a member [sic] of men and younger men of the community, usually in the evening and early morning hours; and the Court further finds that on occasion noisy parties would result and on occasion the Respondent was seen to be in what appeared to be an intoxicated condition.

THE COURT FURTHER FINDS That the automobiles or other vehicles of the visitors would often be parked in front of Respondent's house and, on occasion, overnight.

THE COURT FURTHER FINDS That, although the testimony of the neighbors as to the above gatherings would indicate some disturbance, that no complaints were ever filed with the local law enforcement officials.

THE COURT FURTHER FINDS That one of the younger male visitors to Respondent's home in November of 1979 caused a blemish or "hickie" to appear on HEATHER ELIZABETH RYAN's neck.

THE COURT FURTHER FINDS That the testimony of the two oldest children in closed chambers elicits that some of the visitors would stay overnight, and in particular the younger visitors, which stay overnight a lot. The oldest boy's DONALD RICHARD RYAN's, testimony further indicated that he had seen his mother in bed on one occasion with one of the youngest visitors. He further indicated that both parties were clothed.

THE COURT FURTHER FINDS That the testimony of the family doctor would indicate that the children had not seen him since the date of dissolution.

THE COURT FURTHER FINDS That Movant's residence is adequate and very suitably located in regard to school playgrounds, parks, etc.

THE COURT FURTHER FINDS That the children's attendance and grades at school are good.

THE COURT FURTHER FINDS That a home study conducted by the Missouri Division of Family Services of both the Movant and the Respondent indicates that each home is quite suitable for the children.

THE COURT FURTHER FINDS That the Attorney for Respondent has requested attorneys fees and finds that the hourly rate of Fifty Dollars ($50.00) per hour is reasonable and that Respondent is requesting the award of One Thousand Five Hundred Eighty Dollars ($1,580.00) as attorneys fees.

## CONCLUSIONS OF LAW

THE COURT CONCLUDES That it has jurisdiction to determine this matter as provided under Section 452.450, R.S.Mo.1978.

THE COURT FURTHER CONCLUDES That the children's best interest and welfare predominate over all other considerations and child custody matters.

THE COURT FURTHER CONCLUDES That the basis of facts which have arisen since the granting of the Decree of Dissolution is sufficient to require reconsideration of the issue of the primary custody and control of the minor children in this matter.

THE COURT FURTHER CONCLUDES That the conduct of Respondent PAMELA

JANE RYAN subsequent to the Decree of Dissolution has not adversely effected the best interest of the children; and consequently, the Court concludes that to grant modification of the primary custody of the children would not serve the best interest of those minor children."