R____, **Petitioner-Respondent,**

v.

R____, **Respondent-Appellant.**

**No. 13529.**

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 31, 1985.

Therese A. Schellhammer, Little, Million, Terando, Schellhammer & Associates, Poplar Bluff, for respondent-appellant.

John R. Hopkins, Jr., Hyde, Purcell, Wilhoit, Spain, Edmundson & Merrell, Poplar Bluff, for petitioner-respondent.

MAUS, Judge.

In this action a marriage of 14 years' duration was dissolved. The primary custody of three children was placed with the wife. The husband was awarded periodic temporary custody. The wife was awarded child support and an attorney's fee. The property of the parties was distributed. The husband appeals.

The husband's most strenuously urged point is error in placing the primary custody of the children with the wife. The trial court found the wife suitable to have custody. No other findings on the issue of custody were made or requested. Rule 73.01(a)(2). A brief summary of the evidence follows.

The parties were married in 1969. A daughter was born in 1971, a son in 1975 and a son in 1976. At the time of the marriage, the husband was attending a university. The wife worked as a secretary and contributed her earnings to the support of the family. The husband also worked his last year. Upon the husband's graduation, they returned to their home community.

The husband held a series of jobs. Some were not too remunerative. There was a brief period of unemployment. Two jobs were some distance from the home. There was conflicting evidence on the amount of time this employment caused him to spend away from home. In 1982, the husband was elected to a responsible public office.

Except for brief periods for the birth of each child, the wife has been employed. She devoted her income to the family. Soon after returning to her home community, she was employed by a government agency. She has since worked continuously for that agency. In 1978, she attended a seven-week training period for employees of this agency. In the fall of 1982, for approximately nine weeks, she participated as an instructor in such a program. In early 1983, she again acted as such an instructor for approximately nine weeks. Each of the training programs was held in a city distant from her home community. Her participation in the programs as an instructor was voluntary.

There was evidence tending to establish the interest and capability of the wife as a parent. She testified that she was the parent who attended to the daily needs of the children. She took them to skating lessons, team trips, swimming, Sunday school, birthday parties, the doctor, etc. She alone was the parent who participated in the customary manner in school activities. She said the husband on occasion drank to excess; he did not devote his time to the family. Instead, he attended ball games, council meetings, sheltered workshop meetings and other similar activities. He spent little time at home or with the children.

That type of evidence tending to favor the husband included the following. He was at home as much as his civic activities and work permitted. He did, when needed, attend to the children. He helped them with homework and took them camping, fishing and hunting. He was the coach of the boy's soccer team. He took them with him while attending to business affairs. When the wife was participating in an employment training session, he alone adequately cared for the children.

There was evidence that during her first training session, the wife and friends spent many of their evenings in bars and nightclubs. From the evidence, it was inferable that during that session the wife formed a

liaison with a musician. There was also undisputed evidence that during this period, she used marijuana on at least one occasion.

During the second training session, she spent her evenings in similar fashion. In December she first met Ron. After returning home, she kept in touch with him by telephone. During the third training session, he had a key to her motel room. After returning home, she maintained a relationship with him by correspondence and telephone. She demonstrated her ardor by sending him parts of a song she wrote. She did not know if it was a love song. She declared she loved him and would love him forever and otherwise referred to their relationship. In June, she made a trip to the city and spent the night with him. Even after learning of the affair, the husband tried to preserve the marriage. The wife conceded her illicit liaison at least contributed to the termination of the marriage. She said that the relationship with Ron was over. But, she did intend to call Ron and report to him the outcome of the proceedings.

In the summer of 1982, the daughter saw the wife and a fellow employee in a woods behind their office. The daughter observed they were smoking something that was not a normal cigarette. There was other evidence tending to establish her use of marijuana.

In a similar vein, a few months before the hearing, at approximately 1:00 a.m., the husband was stopped by a traffic officer. With the husband was a local go-go dancer. He explained she was hitchhiking and he was driving her home. The "baby sitter" hired by the husband played in a band that apparently appeared in local nightclubs. The food this baby sitter most often prepared for the children was cheese sandwiches.

The daughter expressed a desire to live with the husband. She said he was trustworthy, she could always find him and go to him. She was aware Ron called her mother. She had a suspicion that the wife used marijuana.

The two younger children testified together. The first said he wanted to live with the wife because she spent more time with them. She took them to Walmart and K–Mart. He added that when the wife was gone, the husband would sneak out of the house at 1:00 or 2:00 a.m. The second repeated this preference for the mother. The daughter testified the mother had caused the boys to dislike the husband.

The husband contends that in awarding custody, the trial court did not consider the relevant factors as established by statute and decided cases. He says the court did not consider the wishes of the most mature child and cites *In re Marriage of Kuhn*, 581 S.W.2d 112 (Mo.App.1979). He argues the children were erroneously placed in the custody of one who had an illicit liaison and cites *Fastnacht v. Fastnacht*, 616 S.W.2d 98 (Mo.App.1981). He asserts it was error to place the children in the custody of one who uses marijuana. *In re Marriage of Ryterski*, 655 S.W.2d 102 (Mo.App.1983) could have been cited.

The wife contends the determination of custody is not to be made by the mechanical application of such truisms or maxims contained in the cases. She argues there is no reason to believe the trial court did not consider all relevant factors. She recites a view of the evidence which, if believed, supports that determination. Therefore, she concludes the award of custody must be affirmed under the doctrine of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ The standard of review enunciated in *Murphy v. Carron*, supra, is applicable to determinations of custody. *B._____ v. L._____*, 558 S.W.2d 738 (Mo.App.1977). The intangible factors involved make it peculiarly appropriate. *Fastnacht v. Fastnacht*, supra. However, the doctrine of that case cannot be invoked to impede a critical appellate review of such a determination. *In re Marriage of Mihalovich*, 659 S.W.2d 798 (Mo.App.1983).

■ It is true custody is not to be determined by a mechanical application or weighing of maxims from decided cases.

J____ G____ W____ v. J____ L____ S____, 414 S.W.2d 352 (Mo.App. 1967). The ultimate test is the best interests of the children. § 452.375. A good environment and a stable home is generally considered as the most important single consideration in custody cases. *In re Marriage of P.I.M.*, 665 S.W.2d 670 (Mo.App. 1984); *In Interest of J.L.H.*, 647 S.W.2d 852 (Mo.App.1983). However, this does not mean maxims from decided cases are to be disregarded. The most advantageous award of custody is to a large degree dependent upon a forecast of future behavior by the custodian. Those maxims generally are recognized guides to the evaluation of past and present conduct in making a forecast of future conduct.

■ On these principles, adverse consideration of past or present inappropriate conduct of a parent is not limited to conduct that has in fact detrimentally affected the children. Such conduct is of importance, perhaps decisive, "when it is reasonably predictable that the moral environment will adversely affect the child." *Ryan v. Ryan*, 652 S.W.2d 313, 315 (Mo. App.1983). Also see *In re Marriage of P.I.M.*, supra. There must be considered what conduct a parent may inspire by example, or what conduct of a child a parent may foster by condonation. Past and present conduct may be a reliable guide to the priorities of a parent. It can also provide an insight into the possibility that a custodial parent will wrench a child from familiar surroundings of accustomed family security. *Knoblauch v. Jones*, 613 S.W.2d 161 (Mo.App.1981); *Galeener v. Black*, 606 S.W.2d 245 (Mo.App.1980).

Upon the basis of *Murphy v. Carron*, supra, this court is called upon to approve a judgment that placed three children in the custody of a parent whose unfavorable conduct need not be restated. This conduct raised issues not resolved by the evidence.

■ This lack of resolution in part resulted from the view of the trial court that letters from Ron to the wife could not be considered because they were hearsay. Those letters were not admitted. In addition, the husband was not allowed to use the letters as a basis for cross-examination. As proof of the events recited therein, the letters were hearsay. But, this does not mean they were inadmissible when offered to prove the state of mind of the writer. *State v. Mucie*, 448 S.W.2d 879 (Mo.App. 1970), cert. denied, 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271; *N.K.M. v. L.E.M.*, 606 S.W.2d 179 (Mo.App.1980); *State ex rel. State Highway Comm. v. City of St. Louis*, 575 S.W.2d 712 (Mo.App.1978). A similar letter that contained "language which, on its face, was undoubtedly such as to excite suspicion about the previous relationship between petitioner" and her paramour has been held admissible in *Ex Parte De Castro*, 238 Mo.App. 1011, 190 S.W.2d 949, 955 (1945). Certainly the wife is subject to cross-examination concerning her concurrence in the sentiments and plans and her conduct as reflected in those letters. The same is true of letters from other associates at the sessions. It is apparent those letters and the information that could have been developed upon the basis of those letters were not considered by the trial court. Compare *J.L.W. v. D.C.W.*, 519 S.W.2d 724 (Mo.App.1975).

■ On appeal, "[u]nless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14. Only an exceptional case, such as this, demands a different treatment. "Our duty to exercise our jurisdiction presupposes a record and evidence upon which we can function with some degree of confidence in the fairness and accuracy of our final conclusion; in the absence of such record and evidence, we must remand the cause to allow development of a complete and lucid record." *B.____ v. L.____*, supra, at 741. Because of the evidence held inadmissible, issues raised but unresolved and other unique factors, that disposition is particularly appropriate to the determination of custody in this action. Compare *Ryan v. Ryan*, supra; *Walck v. Walck*, 651 S.W.2d 559 (Mo.App.1983); *Rodden v. Rodden*, 527 S.W.2d 41 (Mo.App.1975); *V.M. v. L.M.*, 526 S.W.2d 947 (Mo.App.1975); *J.____*

G_____ W_____ v. J_____ L_____ S_____, supra.

■ The husband contends the trial court erred in awarding the wife $1,600 for an attorney's fee. The award of an attorney's fee is within the discretion of the trial court. *Atwood v. Atwood,* 664 S.W.2d 673 (Mo.App.1984). That discretion is to be exercised upon a consideration of all relevant factors. § 452.355. The wife's conduct is but one factor. It does not, as the husband contends, establish the trial court abused its discretion in making such an award.

■ For his last point, the husband asserts error in the distribution of the marital property. The weighing of all relevant factors in that distribution is again for the trial court. *Forsythe v. Forsythe,* 591 S.W.2d 222 (Mo.App.1979). Again, when considered with all other relevant factors, the wife's misconduct does not establish an abuse of discretion by the trial court. The husband's argument of a grossly inequitable distribution is based upon estimates contrary even to his own ultimate admissions of value. That argument does not establish error and the point is denied.

The cause is remanded for a de novo hearing upon the issue of custody of the three children and child support. Rule 84.-14. The judgment is affirmed in all other respects. *V.M. v. L.M.,* supra.

PREWITT, C.J., and CROW, J., recused.

TITUS and HOGAN, J., concur.