F. Scott SHANNON, Jr., Appellant,

v.

Paula D. SHANNON, Respondent.

No. KCD 28733.

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer Denied May 2, 1977.

Jon M. Krebbs, Kansas City, for appellant.

James E. Campbell, Loren G. Rea, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Dissolution of marriage proceeding. The contested issue was custody of a child. Trial court dissolved marriage and awarded custody of child to mother. Father appeals.

F. Scott Shannon, Jr., and Paula Shannon were married September 8, 1966. Paula was 19 years of age at that time. A child was born to the parties January 8, 1969. The custody of that child, Craig Lee Shannon, the only child of the marriage, is the issue here. In August, 1969, the parties separated. According to Scott, the separation followed an incident in which the child was left at the couple's residence all day, unattended. Paula explained the incident by stating that she was looking for a job and left the house early with the understanding that Scott would take the child to relatives for the day.

Scott left the apartment where the couple lived and took Craig. He left him with an aunt for about 30 days while a room at Scott's parents' house was prepared for Scott and Craig. They then moved into the parents' house. Scott, who was employed at a bank, took the child to a baby-sitter's Monday through Friday for about 2½ years.

In January, 1972, Craig was enrolled at the Belmont Montessori School. Scott rented a house in which he lived with Craig.

According to Scott's stepbrother, Scott's girl friend also had lived there for about a year prior to the hearing in the trial court in March, 1976.

In March, 1975, a joint petition for dissolution of the marriage was filed. Paula denied knowledge of the filing of the joint petition and denied that the signature purporting to be hers on the petition was in fact her signature. She filed an answer and counterclaim so stating. After a hearing at which the parties and other witnesses were heard and which included an in camera interview by the court of Craig with attorneys present, the court entered a decree of dissolution and awarded Paula custody of the child at the conclusion of the current school year. She was awarded $200 monthly for his care.

In awarding custody to the mother the trial court stated that the child in the in camera interview had indicated his love for both parents and had expressed no preference for living with either of them. The court stated that both parties were fit parents and that the home environment and surroundings provided by each were adequate for the healthy, normal upbringing of the child. He further found that the child had been in the actual custody of the father, partially explained by the father's reluctance to share custody. The court also found that, although the mother might not at one time have appreciated the value of the child and the obligation of motherhood, that situation no longer prevailed. The court concluded that the best interest of the child would be served by granting custody to the mother.

On this appeal, appellant urges that the finding of the trial court regarding the custody of the child was contrary to the credible and uncontested evidence. "Appellant rests his argument on the following uncontroverted facts:

"1. That Appellant has been the primary caretaker and custodian of the child since August 1969.

"2. That all witnesses testified that the minor child was a normal, bright, intelli-

gent young man with no apparent psychological problems.

"3. That Respondent never requested sole custody or took full charge of the minor child during the seven year separation of the parties.

"4. That Appellant has been the most stable economically and psychologically during the period of separation."

Appellant's argument overlooks the countervailing evidence before the trial court which undoubtedly diminished the convincing effect of the evidence relied upon by appellant.

Unquestionably the evidence did show that appellant had the primary custody of the child from the time of the separation until the dissolution of the marriage. What appellant ignores is the testimony before the trial court which would alleviate the weight to be afforded this proof. For example, appellant testified that, for about a two-year period following the separation, respondent displayed no interest whatsoever in Craig. The respondent, on the contrary, testified that she had the child on weekends, almost without exception, and that from the outset of the separation she was concerned about Craig's welfare and arranged her employment in order to be accessible and be able to see her child. She testified that she arranged for the enrollment of Craig at the Montessori School, selected the school and aided appellant in paying the tuition.

According to respondent, she loved her son and wanted custody of him for that reason and because they had an excellent relationship and "he needs me." She didn't take the child upon the separation because she was afraid of appellant.

" * * * I was in a state of turmoil at the time, and I wanted to go out and find— make a life for my own and find a place that I could have the child, and I just couldn't take the child to nothing, and I didn't have a home for him, and Scott would not let me stay at our home."

No one disputed the testimony as to the well-being of Craig at the time of the hearing. There was no evidence presented to the trial court which called for the conclusion that a transfer of custody to respondent would adversely affect the child's development.

■ There was no evidence that respondent had sought full custody of the child prior to the dissolution proceedings. However, as above pointed out, the trial court had respondent's explanation of her proper role in the circumstances. The prior attitude of respondent did not preclude a change in her attitude and a seeking of custody.

As a bank employee, and a vice-president at the time of the hearing, appellant undoubtedly demonstrated greater economic stability than respondent. Respondent had held a number of jobs. At the time of the hearing, she was receiving unemployment compensation and was also the beneficiary of food stamps. She was living in a rental house in a rural area near Louisburg, Kansas. The trial court recognized that the parties to the litigation enjoyed a radically different life style. He acknowledged their right to do so and did not see fit to disregard respondent's claim to the custody of Craig because of a somewhat unconventional style.

■ There was no convincing evidence that respondent's psychological stability was so deficient as to call for a contrary result on this issue. There was some evidence of emotional stress at the time of the separation, but not of such continuing nature as to render respondent unfit for the custody of her child. The only claim of misconduct was evidence of appellant's witnesses that respondent had appeared nude from the waist up in a production of a film based upon the Manson family. Respondent did appear in the film but denied that she had disrobed. At best, this was testimony to be weighed against the testimony that Craig was living with his father and his father's girl friend.

■ As appellant points out, the inclination of courts to prefer the mother in awarding custody of children of tender age

is not a rule of automatic application. See R_____ G_____ T_____ v. Y_____ G_____ T_____, 543 S.W.2d 330 (Mo.App. 1976). In that case, the court affirmed an award of custody to the father, stating (543 S.W.2d 331–332):

"The desirability of awarding custody of children of tender years, especially girls, to their mothers should not be indulged to the extent of excluding consideration of all other relevant matters. *Johnson v. Johnson,* 526 S.W.2d 33, 37 (Mo.App.1975). The dominant concern when determining custody is the 'best interests' of the child or children. Section 452.375, RSMo Supp.1973; *In re Marriage of Powers,* 527 S.W.2d 949, 952 (Mo.App.1975) and *Kanady v. Kanady,* 527 S.W.2d 704, 707 (Mo.App.1975). Once the trial court has spoken on the subject, an appellate court should not disturb a custody order unless the 'best interests' of the child or children require a different disposition. *In re Marriage of Powers,* supra, at 952. Deference should be given to a trial court's assessment of what serves the 'best interests' of a child or children in custody matters and its decision in that respect should be affirmed on appeal unless it lacks substantial evidence to support it, or is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)."

In that case, the appellate court declined to substitute its judgment for that of the trial court.

An exceptional case in which the appellate court did reject the finding of the trial court on a custody issue is that of *In re Marriage of Zigler,* 529 S.W.2d 909 (Mo. App.1975). There the trial court denied a mother's claim to custody because the evidence showed her to be emotionally unstable. On appeal, the court found the conclusion to have been unsupported by the evidence and reversed the trial court's order.

■ In this case, the trial court's order was based essentially upon the conclusion that other significant factors being equal, preference should be given to the mother's right of custody. Undoubtedly, there was evidence upon which the court might have come to a contrary conclusion, but that fact does not necessitate the conclusion that the trial court was mistaken. There was evidence to support its conclusion. Therefore, this court will not substitute its judgment for that of the trial court.

Judgment affirmed.

All concur.