We have found no error and affirm the judgment of the trial court.

CLEMENS, P. J., and SMITH, J., concur.

J———— A———— F————, Appellant,

v.

P———— J———— F————, Respondent.

No. 37511.

Missouri Court of Appeals,
St. Louis District,
Division Four.

June 7, 1977.

Steiner & Fenlon, Joseph A. Fenlon, Clayton, for appellant.

Gunn & Gunn, Donald Gunn, Jr., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

In this case, the trial court decreed dissolution of the marriage of the parties, made an award to each party of the marital property, entered an award for maintenance in favor of appellant-wife in the amount of $500 a month, and awarded care, custody and control of a seven year old minor female child to the father with periods of temporary custody in the mother at specifically stated times. Petitioner-wife has appealed and asserts error on the part of the trial court (1) in awarding "full custody" to respondent, (2) in failing to return the child to appellant pursuant to a post-trial motion, (3) in awarding only $500 a month as maintenance, and (4) in excluding a profit sharing plan from the marital property. We affirm.

We see no occasion to set forth a detailed statement of the evidence which brought about an award of custody of the child to her father. It is sufficient to say that from the evidence, if believed, which the trial court apparently did, the court could have found that appellant failed to care for the child properly, permitted her to roam the neighborhood, left the child alone in the house of evenings while she played bridge or went to bars, drank frequently and to excess, used foul and indecent language in the presence of the child, and while in her house or in the house of another engaged in illicit sexual conduct while the child was present in the house. In addition she permitted a single male friend to live in the house with her and her daughter.

In her brief to this court appellant argues that the award of custody to the father was erroneous because the evidence showed that (a) the child had been with the mother from birth, (b) the child was receiving adequate care from the mother, (c) the mother was unemployed and able to devote full time to the care of the child, (d) respondent was employed full time and was required to be out of town frequently and would have to hire a housekeeper to take care of the child, (e) under the decree, as issued, the father would be with the child less than if he had weekends of temporary custody, and (f) there was no evidence that

the mother's misconduct made her unsuitable as a custodian for the child.

The weight of the evidence is clearly contrary to appellant's contentions (b) and (f). As to contention (c), it is true that appellant was not employed and was able to devote full time to the care of the child, but the evidence compels the conclusion that she did not do so. It is also true that respondent had to make special arrangements to care for the child. However, he agreed to do so, and we have nothing before us to indicate he has failed in that respect, and the court apparently was of the opinion that this arrangement would be for the best interest of the child.

By reason of the limitations on the scope of review in this court tried case, "the decree or judgment of the trial court will be sustained * * * unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

In matters involving the custody of a minor child of divorced parents, there are no precise and inflexible rules that are applicable to every case. Each case must turn on its own facts. Overriding all other considerations is the court's paramount concern of reaching the result which is in the best interest and welfare of the child. *Brand v. Brand,* 534 S.W.2d 628 (Mo.App.1976). The ruling of the trial court concerning the proper party to have custody is "not to be lightly disturbed and will be deferred to unless the [reviewing] court is firmly convinced that the welfare of the [child] requires some other disposition." *Ackfeld v. Ackfeld,* 483 S.W.2d 614, 616 (Mo.App.1972); *Glaves v. Glaves,* 523 S.W.2d 169 (Mo.App. 1975); *In re Marriage of Powers,* 527 S.W.2d 949 (Mo.App.1975). We recognize that it is a well established principle that, other things being equal, custody of children of tender years, especially girls, should ordinarily be awarded to the mother. *Payne v. Payne,* 399 S.W.2d 619 (Mo.App. 1966). However, courts are not unwilling to award custody to the father where the best interest of the child will be served, and this is so even though the mother is a fit and proper person. *M_____ L_____ v. M_____ R_____,* 407 S.W.2d 600 (Mo.App. 1966); *Jaros v. Jaros,* 395 S.W.2d 217 (Mo. App.1965). In this case, the court found that the best interest of the child would be served by placing custody in the father with visitation rights in the mother. In a post-trial order, pursuant to § 452.405, Laws of Missouri 1973, p. 470, the court directed the county juvenile officer to exercise continuing supervision over the case. In this way the court will become aware of any change in the circumstances.

Appellant relies on *In re Marriage of Zigler,* 529 S.W.2d 909 (Mo.App.1975). There the trial court awarded custody of a four year old son to the father because he was a "more stable person" than the mother. This court reversed, and in doing so found that the mother was not unsuitable to have custody, and that in these circumstances " 'a mother is deemed to be the one best able to care for a child of tender years.' " This case is to be distinguished in that the evidence clearly justifies the court in concluding that custody of this child should not be placed with appellant. At a hearing on a post-trial motion, hereafter discussed, the trial court had the opportunity to examine and review the manner in which respondent was caring for the child, and it continued custody in the father.

The evidence, considered in its entirety, supports the decree of the court that custody of this seven year old little girl should not be placed in the mother, and we cannot say that the decree placing custody in the father was not in the best interest and welfare of the child.

■ Appellant's second point is that the court erred in failing to return the child to her pursuant to her request in a post-trial motion.

The judgment was entered on September 18, 1975. Eight days later appellant filed a

motion to "open judgment and take additional testimony." On October 16, a hearing was held after the court stated that it would consider the motion filed as one to modify the decree.

At the hearing it was developed that a few days after the entry of the decree, respondent requested appellant to deliver custody of the child to him pursuant to the decree and she refused because, as she stated, she intended to appeal. Respondent then entered the house, using his key, and took the child to his apartment. He had two police officers with him who, as one officer testified, were there only "to keep the peace" and not enforce any "court injunction or order."

Appellant argues that the court erred in not transferring custody to her as a result of the hearing on the motion because:

   (a) Respondent took the child "three days after the decree was entered and before the judgment became final," and did so at 9:00 o'clock of an evening in the company of two police officers.

   (b) Respondent knew the child was emotionally upset at the time because of the dissolution proceedings.

   (c) Respondent entered the child in a new school in a different neighborhood.

   (d) Respondent continued working and hired a babysitter to be with the child "notwithstanding his representation to the trial court that if awarded custody he would stay home one month while the girl got used to her surroundings."

Near the close of the hearing on the motion the court commented to counsel that it had heard sufficient evidence to convince it that the award of custody to the father was correct. The evidence does not support the assertion that the child was emotionally upset. Also the change in schools was desirable because of the location of respondent's apartment in relation to the school the child previously attended. We find no "representation" by respondent that if he was awarded custody he "would stay home one month." He did assure the court that

he had "permission" of his employer to take whatever time it required in the form of a leave of absence to get "set up properly in a household."

The conclusion of the trial court not to change its award of custody is not contrary to the evidence and did not constitute an abuse of discretion. We find no merit to appellant's second point.

Appellant next asserts that the trial court erred in awarding maintenance to her in an amount of only $500 a month when her monthly expenses were in excess of $949 (her list of expenses totaled $927) and when she had no particular skills which would enable her to earn an immediate substantial income.

By division of the marital property, the court awarded appellant a checking account, a Toyota automobile, some land in Arizona and the household furniture and furnishings, the total value of which was estimated to be $7,000.00. Respondent received cash, the equity in the house, a boat, two shares of stock and "McDonald's Profit Sharing Plan" the value of all of which was estimated to be $32,758.29. In order "to more equalize the division of assets," the court then awarded a judgment in favor of appellant and against respondent in the amount of $10,000.00, to be paid to her at the rate of $400.00 a month. This resulted in appellant receiving $17,000.00 of the marital assets, and respondent receiving $22,758.29. In making the award of $500 a month for maintenance the court observed that appellant "is an able-bodied woman who will not have custody of any minor child pursuant to the provisions of this decree, and that the award of maintenance herein should terminate or be substantially reduced immediately upon [appellant] obtaining suitable employment or upon [appellant] acquiring adequate training to enable her to find suitable employment."

We note that the monthly expenses listed by appellant includes $404 a month for the mortgage payment on the house and $180 a month for utilities. The house was awarded to respondent. It is true that appellant

will have some rent, and possibly utilities, to pay, but the total should be substantially less than $584 a month.

By reason of § 452.335, the trial court is directed to make provisions for the reasonable need of the spouse seeking maintenance, but as noted in *Brueggemann v. Brueggemann*, 551 S.W.2d 853 (Mo.App.1977) subsection 1 of that section indicates that if possible such reasonable needs are to be met by income of the spouse seeking maintenance and the trial court's division of property. Appellant has a beautician's license in Illinois and expected to get a license in Missouri in about a year. As the court found, at the time of trial she was able to work. She has available to her $900 a month, and that can be increased by some gainful employment. We find no abuse of discretion in the awarding of $500 a month maintenance.

■ Appellant's last point is that the trial court erred in not including as marital property a profit sharing plan of the husband which was worth $3,037.94 at the time of the marriage, "to which the husband had made contributions for two years during the marriage," and which was worth $10,552.23 at the time of dissolution. This plan was referred to in the judgment as the Nicolet Foods Profit Sharing Trust. It was set apart by the trial court to respondent as his separate property. It is to be distinguished from what was referred to as the McDonald's Profit Sharing Plan which was held to be marital property.

At the time of the marriage, September 16, 1967, respondent was employed by "a franchise in Minneapolis, Minnesota," which was acquired by McDonald Corporation, respondent's subsequent employer in April 1969. The former employer maintained a profit sharing plan into which respondent "never put any money," and when Nicolet Foods was acquired by McDonald Corporation "the fund was closed" and became "a depositary fund where nothing was paid out of it, nothing more goes into it." Any change in value thereafter, according to respondent, depended "solely on the market." The record does not indicate whether the income is added to the principal or

distributed, and if the latter in what manner. There is nothing in the record to indicate for how long the Nicolet Plan was in existence before it was "closed," or in what event or circumstances respondent will be able to obtain his interest in the fund, or as to how such interest will be payable, that is, in a lump sum or in periodic payments. Neither is there any evidence as to how much was contributed to the fund after September 16, 1967, the date of the marriage, and until the fund was "closed."

Appellant argues that since the value of respondent's interest at the time of dissolution was estimated to be $10,552.23, there was an accumulation or increase in value during the marriage of $7,514.29, and that she should be awarded 43.37% (the percentage of marital property awarded to her) of the accumulation, or $3,253.69. [$3,258.94] The effect of this contention is to concede that the interest of respondent at the time of the marriage was his separate property, but that increases in value during the marriage by reason of changes in "market" value constitute marital property. This contention is directly contrary to the provisions of § 452.330 wherein it is provided that "marital property" means all property acquired by either spouse subsequent to the marriage except "the increase in value of property acquired prior to the marriage."

As previously noted, there is no evidence that anything was contributed to the Nicolet Profit Sharing Plan during the marriage, and appellant's point, as limited by the argument in support of the point, pertains only to an increase during the marriage of separate property of respondent. We find no error in the ruling that the Nicolet Profit Sharing Plan was separate property.

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.