738

B. _____, **Petitioner-Respondent,**

v.

L. _____, **Respondent-Appellant.**

No. 10222.

Missouri Court of Appeals,
Springfield District.

Aug. 23, 1977.

Motion for Rehearing or Transfer
Denied Sept. 9, 1977.

C. John Pleban, London & Greenberg, St. Louis, Gregory K. Johnson, Springfield, for respondent-appellant.

Nicholas R. Fiorella, Springfield, for petitioner-respondent.

PER CURIAM:

This is an action to modify the custody provisions of a decree of divorce rendered by the Circuit Court of Greene County on June 29, 1970. The original decree granted custody of E. _____, the parties' son, to B. _____, his mother, and L. _____, the father, was ordered to pay the sum of $150 per month child support. Subsequently, the

decree was again modified to permit the father to visit his son every third weekend from Friday afternoon to 6:00 p. m. Sunday, and to have custody of the child for one week at Christmas and for six weeks during the summer vacation. The motion we consider here was filed April 28, 1975. The trial court found there had been no such material change of circumstances as to warrant a general change of custody but also found it would be in the best interest of the child to be in his father's custody for eight weeks during the summer vacation beginning in 1976. The trial court increased the child support payments to $200 per month commencing September 1, 1975. The father thereupon filed an extensive "Motion for New Trial and Disqualification of Judge" setting up that certain off-hand comments made by the trial court after the hearing indicated bias and prejudice. The father prayed a new trial and further prayed that the trial court disqualify itself after ordering the new trial. This motion was denied after a hearing, the trial court refused to modify its previous custody order, and this appeal followed.

As material here, the record shows that the child whose custody is sought is a male child born August 19, 1965. The parties' backgrounds are diverse. The father came to the United States seeking political asylum and has only recently become a citizen. The mother, who appears to be about 34 years of age, is a native American who seems to have been educated in southwest Missouri. The father is a devout Catholic; the mother was reared as a Protestant, but was converted before she married.

The cause of the parties' separation prior to their divorce is, of course, not before us. Their marriage lasted about five years. During the two years prior to the divorce, the mother was very unhappy, because, as she put it "I was in complete subservience to my husband. I had to take care [of] the child, home, yard, maintenance, simply for [sic] the fact that [my husband] worked and brought in the salary." As noted, the par-

ties were divorced on June 29, 1970, and the wife was entrusted with the custody of her son.

At the time the motion now on appeal was heard—August 27, 1975—the father had remarried. Because of the frequent visitation periods, the father's second wife has become acquainted with the child, and her testimony was that they get along well together. The father has advanced academic degrees, as does his wife. He is an instructor at one of the branches of our state university; his wife is a college teacher. Both earn substantial salaries. They own a two-bedroom home in an urban area near the university. It is obvious that the father is devoted to his son; he testified that he has traveled more than 350,000 miles to exercise his right of visitation.

Considering all the evidence, including that bearing on conditions which existed and events which occurred prior to the 1973 modification, the mother's situation seems considerably less stable. She has some education, including some college instruction, but she has not succeeded in acquiring any marketable skill. She is dependent upon her parents to a considerable degree. She lives in a house "possibly three hundred feet" from her parents and pays rent when she is able. She has sought part-time employment, and has "signed up" for the WIN program because "that is a requirement of the welfare office." She has refused to place her child in a day-care center in order to obtain full-time employment. Arguably, the mother's child support payments, together with ADC and food stamps are her only source of income. There is no showing that she is in poor health, nor any other evidence which convincingly explains her unwillingness to acquire further education or a useful skill.

Inevitably, each party sought to prove the other guilty of sexual misconduct. The father extracted an admission from the mother that she had been keeping company with a recently divorced father of four, and that she has had clandestine sexual rela-

tions with this man. This testimony was offset to a considerable degree by the mother's testimony that the father, prior to his divorce, insisted that he, the mother and the father's present wife, "the three of us, be nude and go to bed together." According to the mother, this menage a trois was a regular matter for several months prior to their separation. This contradictory evidence illustrates but one aspect of an extremely confused and contradictory record. The mother's apparent unwillingness to work, for example, is offset by a sworn allegation in the father's posttrial motion that the mother had obtained full-time employment. There was a hearing on the posttrial motion, as we have noted, but no evidence was received concerning the mother's employment status.

We review this case, and all other bench-tried cases, under the provisions of Rule 73.01, paras. 3(a) and (b), V.A.M.R., which provide that "[t]he court shall review the case upon both the law and the evidence as in suits of an equitable nature," and "[d]ue regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." As Rule 73.01, para. 3 was construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 [1–3] (Mo.banc 1976), this means:

. . . that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong.

. . .

We have neither the authority nor the inclination to attempt a gloss on *Murphy v. Carron, supra,* but some recent studies would accord an even greater degree of deference to the trial court's findings in a bench-tried case. Recently the American Bar Association's Commission on Standards of Judicial Administration,[1] attempting to formulate standards relating to appellate courts, suggested that:

[i]n light of the pertinent historical and practical considerations involved, the appropriate rule should be that a trial judge's findings of fact and application of law to fact should be governed by the same standard that is applied to corresponding jury determinations. The trial judge, like the jury, has opportunity to see and hear the witnesses and to evaluate the evidence as a whole. The trial judge, unlike the appellate court, is regularly engaged in resolving issues of fact and is primarily responsible for doing so. To the extent that his authority in this regard is treated as less then that of the jury, appeal inevitably becomes a mechanism for retrying the facts, to the detriment of both the trial and appellate court. . . .

We are here asked to pass upon a matter which has several times been before the trial court, without the benefit of all the information the trial court had. This motion is by no means the first motion filed seeking modification of the original decree; the divorce was granted in June 1970, and thereafter motions to modify were filed on October 29, 1970, August 28, 1973 and August 25, 1975. The motion filed October 29, 1970 was dismissed as moot, but some evidence was heard in 1973 and the original decree was modified at that time. No doubt the trial court could look to the whole record of the proceeding to determine what issues had been raised and disposed of at the time the divorce was granted and at the time the previous motion to modify was heard, *Hawkins v. Hawkins,* 462 S.W.2d 818, 826 [11] (Mo.App.1970), but we have no way to determine the extent to which contentions similar to those presented on *this*

1. American Bar Association Commission on Standards of Judicial Administration Standards Relating to Appellate Courts, Commentary to Standard § 3.11, p. 23 (Tent.Draft 1976).

motion were presented and adjudicated, either directly or by inference, in previous proceedings. Moreover, we are left with the uncomfortable feeling that we do not have all the exhibits, or possibly the wrong exhibits before us. After three unavailing requests to counsel, we obtained some of the exhibits by dispatching a messenger to fetch them. Marked as Respondent's Exhibit 1 is a letter, signed "Love, Sex," advising the addressee that she is pregnant; presumably the writer is asking for money or child support; and the addressee has written several coarse comments about the margin, apparently referring to the writer. This exhibit is not indexed; we do not know by whom it was written nor to whom it was addressed. The transcript also indicates that records of the Division of Family Services were made available to the trial court and that the trial court—by stipulation—took those records in consideration. Whatever may have been the nature or relevance of those records, they are not before us. Our duty to exercise our jurisdiction presupposes a record and evidence upon which we can function with some degree of confidence in the fairness and accuracy of our final conclusion; in the absence of such record and evidence, we must remand the cause to allow development of a complete and lucid record. *Rodden v. Rodden,* 527 S.W.2d 41 (Mo.App.1975). On the state of this record, any positive disposition of the cause would amount to second-guessing the trial court. We decline to do so.

There is another and more compelling reason, in our view, why the cause should be remanded for further hearing. Notice of appeal was originally filed in this case on December 17, 1975. On June 17, 1976, the appeal was dismissed by this court for failure to comply with Rule 81.18, V.A.M.R., and an opinion was filed. On June 18, 1976, the appellant moved this court to reinstate the appeal; upon the court's own motion the opinion filed was withdrawn and the appeal was restored to the docket. All briefs were not finally filed in the cause until December 13, 1976. As we have said, we were obliged to secure such exhibits as we could muster wholly on our own. We are thus reviewing an incomplete record nearly two years old. Such delay is not uncommon, unfortunately, but in this case the delay is significant. There is evidence in the record before us which suggests instability and immaturity on the part of the mother, and indicates that a change of custody *might* be desirable. On the other hand, we cannot say with any degree of confidence that substantial and material changes of condition have not occurred since this latest motion to modify was heard on September 2, 1975; any final disposition we might now direct would rest upon speculation. For the reasons indicated, the order entered on September 4, 1975 is set aside and the cause is remanded to the Circuit Court of Greene County for further hearing. *J____ G____ W____ v. J____ L____ S____,* 414 S.W.2d 352, 360–361 (Mo.App.1967).

BILLINGS, C. J., and STONE, HOGAN and TITUS, JJ., concur.

FLANIGAN, J., dissents. An opinion filed.

FLANIGAN, Judge, dissenting:

I respectfully dissent.

Under Rule 84.13(b) this court is precluded from reversing any judgment "unless it finds that error was committed by the trial court against the appellant, materially affecting the merits of the action." No such error has been demonstrated by appellant.

Under Rule 81.12(a) it was the responsibility of appellant to cause the transcript to be timely filed. On June 17, 1976, this court dismissed this appeal because appellant failed to carry out that responsibility. Later the appeal was reinstated.

Under Rule 81.15 the parties may stipulate that all or any part of the original exhibits may be omitted from the transcript on appeal and be separately filed in the appellate court. Such a stipulation was

made here. Under Rule 4 of this court [found at 499–500 S.W.2d (Missouri Cases) pp. XXXI–XXXIV] the making of that stipulation imposed upon appellant the duty to "file all the exhibits omitted from the transcript on appeal on or before the day the case is set for hearing." Appellant failed to do so.

I do not believe that a case should be remanded for the purpose of taking additional testimony merely because almost two years have elapsed during the pendency of this appeal. Some delay is inherent in the appellate process and, standing alone, should not constitute a basis for taking additional testimony.

The deficiencies in the record on appeal are not attributable to petitioner-respondent nor, of course, to the trial court, yet respondent-appellant has achieved a reversal and remand, a victory to which he is not entitled.