**Charlie B. MITCHELL, Petitioner-Respondent,**

v.

**Theresa MITCHELL, Appellant.**

**No. 11640.**

Missouri Court of Appeals, Southern District, Division Three.

Feb. 2, 1981.

Jasper N. Edmundson, Bradley J. Baumgart, Hyde, Purcell, Wilhoit, Edmundson & Merrell, Poplar Bluff, for petitioner-respondent.

Richard E. Snider, Southeast Missouri Legal Services, Inc., Poplar Bluff, for appellant.

BILLINGS, Presiding Judge.

Appeal from the order by the Butler County Circuit Court granting the father's motion to modify custody. The father was awarded custody of the parties' three-year-old daughter and the wife has appealed. She asserts inter alia, that there is no substantial evidence of changed circumstances to support the modification order. We agree and reverse.

Samantha, the only child born to the parties, was placed in the custody of her mother, subject to reasonable visitation by the father, pursuant to the dissolution decree of February 9, 1976. The decree was modified on March 27, 1978 giving the father the right to visit with Samantha on the third weekend of each month, two months out of the summer and on alternate Thanksgiving and Christmas holidays.

The record reveals that both parties remarried in 1976. The mother, Theresa Mitchell Jones, has had two children from her second marriage and at the time of the hearing was pregnant with a third. She has one other child born before the parties were married. At the time of the hearing she was separated from her husband and had assigned her support rights from Mr. Jones to the State of Missouri in order to receive ADC. Though not presently employed, she also receives food stamps, food vouchers through the WIC program and state medical insurance.

The father and his present wife are both employed in St. Louis, earning between $2,000 and $2,200 per month and own a house with a mortgage. They have no children of their own.

The petitioner-father's motion to modify alleged the following change of circumstances:

"(a) Said child, while in the custody of the Respondent, Theresa Mitchell Jones, has been beaten, abused, mistreated and malnourished.

(b) The conditions under which said child is forced to live while in the custody of the Respondent, present a severe danger to her life, health and emotional well being."

The party originally awarded custody is presumed to be a suitable custodian and the party seeking the change has the burden of showing that a change of circumstances warrants a change of custody. *In re Marriage of Britton*, 574 S.W.2d 475 (Mo.App.1978); § 452.410 RSMo 1978.

Petitioner brought Samantha home during Thanksgiving, 1978, according to the terms of the 1978 modification order. The parties had agreed that she was to be returned to her mother around the first of the year. Petitioner failed to return Samantha and did not allow her mother to see Samantha when she went to St. Louis in mid-January. It was only with her uncle's presence that Mrs. Jones was allowed to visit Samantha for 30 minutes in May of 1979.

Petitioner and his present wife both claim that they saw scratches and bruises on Samantha after they brought her home during Thanksgiving. However, both further testified that they knew nothing as to the cause of these injuries or of Samantha's home life with her mother. There was no evidence that Samantha had similar injuries at any other time.

Their testimony also reveals that the only treatment that the doctor performed was to swab cotton over the scratches and the only prescription was for a decongestant. It appears that he did however, order that Samantha take vitamins and eat a balanced diet. After six months with petitioner and his wife, the record reveals little change in the smaller-than-average Samantha.

Change in circumstances "denotes the concept of conditions which come into existence after the decree or become known after the decree, which if known at the time would have caused the court to make a disposition other than it did." *McPherson v. McPherson*, 447 S.W.2d 791, 794 (Mo.App. 1969). It appears clear that no such change in circumstances has occurred. And while

it may well be that the father's financial situation is "better," this is not evidence supporting any need for change. *Klaus v. Klaus*, 509 S.W.2d 479 (Mo.App.1974).

■ It is the duty of this court to reach its own conclusion based on the law and the evidence and enter such judgment as the trial court should have entered. *Korn v. Korn*, 584 S.W.2d 179 (Mo.App.1979).

The order modifying custody is reversed.

HOGAN and PREWITT, JJ., concur.

GREENE, J., dissents and files opinion.

GREENE, Judge, dissenting.

I respectfully dissent. This was a court-tried case in which the trial court sustained the father's motion to change custody of a three-year-old child. The majority reverse the trial court's judgment for the reason that, in their opinion, there was no substantial evidence of changed circumstances to support the modification order. I do not agree with their conclusion.

It is not the function of an appellate court to review court-tried cases de novo. The scope of appellate review is clearly defined. We should not set aside a trial court judgment in a court-tried case as not supported by substantial evidence, or as against the weight of the evidence, unless we have a firm belief that the trial court was wrong, giving due regard to the trial court's unique capacity to judge the candor and sincerity of witnesses, and with recognition of the fact that the trial court, sitting as a trier of fact, may believe or disbelieve all or part of the testimony of any witness. *D. S. v. H. T. H.*, 600 S.W.2d 698, 700 (Mo.App.1980).

In this case, the motion to modify alleged certain changes in circumstances that had occurred since the date of the dissolution of the marriage that affected the welfare of the child, which were a) that while in the custody of the mother, the child had been beaten, abused, mistreated, and malnourished, and b) the conditions under which the child was forced to live while in the mother's custody presented a danger to her life, health, and emotional well-being.

Evidence to support those allegations is as follows. There was substantial evidence before the trial court that when the father picked up his three-year-old child for the Thanksgiving visitation in 1978, the child was suffering from bruises and marks all over her body, that she was bruised on the trunk, back sides, and legs, that there was bruising and swelling on her lower back, and that there were scratches that broke the skin on the front and back part of her upper body that required medical attention. The child was weak, malnourished and could hardly stand. There was testimony, not objected to, that the wounds on the child's body were inflicted by someone while the child was in the custody of the mother.

Other relevant evidence was that the child's mother lived in a four-room, two bedroom house. In the home with the mother was an illegitimate child by a "service guy", born out of wedlock before her marriage to Mitchell, and two children born of her marriage to Isaac Jones, who she married after the dissolution of her marriage to Mitchell. At the time of the custody hearing, she was again pregnant, presumably by Jones, even though she and Jones had been separated for seven months, and the baby was not due for four or five additional months. Jones did not support his children. The mother exists on A.D.C. and food stamps.

At the close of the evidence, the trial court observed, "Mrs. Jones already has three children living in a two-bedroom house and she is pregnant and going to have four and then she gets Samantha, she's going to have five, where are they going to stay?" Where, indeed.

Home studies which were received into evidence with the approval of the mother's attorney, show that living conditions in the mother's home are less than desirable, and that the house contains several safety hazards, such as an exposed hot water heater. On the other hand, the father's home is modern and well-kept. He has a stable second marriage of over three years' dura-

tion, and his income is more than adequate. His second wife joins in his request for custody of the child.

This small child has resided with her father and step-mother in a place where she is happy, secure, and has been well cared for for over two years. By this time, she will have started to school in a stable environment. To uproot her from this and place her in an environment where instability is the rule, rather than the exception, is, in my opinion, the height of folly.

I believe that the trial court correctly assessed the problem and decided the issue, but it is not a question of whether I, or any member of this court, would have decided the case as the trial judge did. The question is whether there was substantial evidence to support the judgment of the trial court. In my opinion, there was.

For that reason, I dissent.